UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                    :

JIM JI DONG CHENG,                  :

                         Plaintiff,    :

              - against -          :

                                      :

T.D. BANK, N.A.,                  :

                         Defendant.    :

                                      :
------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-3282 (BMC)

**COGAN**, District Judge.

Defendant T.D. Bank made an offer by mail to qualifying first-time customers of a monetary incentive to open and maintain a new account. The offer was not sent to plaintiff, but to his roommate. Plaintiff, nevertheless, seized upon the offer and when the Bank declined to pay the incentive, he commenced this action. The Bank has moved to dismiss plaintiff's action for a violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, New York General Business Law §§ 349 and 350, and common law breach of contract. For the reasons discussed below, I grant the Bank's motion.

## BACKGROUND

In order to encourage consumers to use its services, the Bank offers a range of promotional monetary incentives to first-time customers. One of these incentives is called the Beyond Savings Bonus. Under the terms of this incentive, qualifying first time customers who open a Beyond Savings Account, deposit $20,000 into that account, and maintain that balance for 90 days, receive $200 in approximately 95 to 140 days.

Plaintiff initially learned about the Bank's promotions, including the Beyond Savings

Bonus, after seeing a mailer from the Bank addressed to his roommate.  Plaintiff claims he then researched this offer online to determine whether it was available to the general public, and found a third-party website saying it was.

Plaintiff opened a Beyond Savings Account on September 25, 2020.  To create his account, Plaintiff clicked a promotional link on a third-party website, which redirected him to the Bank's website, where he claims he saw the following image:



Plaintiff claims this promotional language is nearly identical to the promotional language that the Bank includes on its website to this very day.  Plaintiff then notes that a true and correct copy of the Bank's current representations to the public regarding the $200 Beyond Savings Bonus contained the following statements:

*Most perks* 

## TD Beyond Savings
## Earn $200

**Earn $200** when you deposit $20,000 or more in new funds within 20 days and maintain a balance of at least $20,000 for 90 days.[1] **Plus,** earn our best rate when you link an eligible TD account.[5]

View account details >

⊖ **Disclosures**

**View account guides**

[1]Offer valid June 1, 2021 through August 17, 2021 and ==is available only to the person addressed in this mailer.== **Checking offer** is not available to existing TD Bank Customers, prior Customers who have had a TD Bank Personal checking relationship within the preceding 12 months, or Customers who received a bonus on a previous checking account at any time.

(Highlight added).  After completing his application for a Beyond Savings Account, plaintiff deposited $20,000.  Three months later, plaintiff asked the Bank to give him the Beyond Savings Bonus.  In response, the Bank notified plaintiff that he would need to wait and that any "promotional credits" for which he qualified would be automatically credited to his account within 95 to 140 days of opening the account.

After 140 days had passed, plaintiff still had not received the Bonus.  Plaintiff sent another message to the Bank questioning its failure.  The Bank responded that plaintiff was not eligible for the $200 because plaintiff needed to have received a promotional mailer addressed to him. The Bank added that although it had sent a mailer to plaintiff's address, the mailer was addressed to "Guo Zhou" – presumably plaintiff's roommate.  After being denied the promotional $200, plaintiff filed this action.

**DISCUSSION**

**I.    Legal Standard**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).  "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  Operating Local 649 Annuity Trust Fund v. Smith

Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Dismissal is proper only where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894-95 (2d Cir. 1976).

"In considering a motion to dismiss . . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010); see Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  In order for a document to be "incorporated by reference," the complaint must rely heavily upon its terms and effects.  See DiFolco, 622 F.3d at 111 ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relied heavily upon its terms and effects, thereby rendering the document integral to the complaint.").  "However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It also must be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Id.

In support of its motion to dismiss, the Bank has provided the Court with two types of external documents: the email exchange plaintiff had with the Bank concerning his expected $200, and images from two T.D. Bank websites, one of which the Bank maintains plaintiff must have used because they were the only ones that existed when plaintiff created his account. Plaintiff does not challenge the email correspondence, as it is repeatedly mentioned in the complaint, but maintains that the Court cannot consider the Bank's proffered website images

because plaintiff "already provided images of the online advertisement that he maintains is 'a true and correct copy of the promotional language plaintiff saw when he was directed to T.D.'s website.'" Plaintiff adds that the promotional language he produced to the Court "contains no carveouts, footnotes or other fine print limiting the offer to only those receiving a promotional mailer."

"[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Here, plaintiff has challenged the authenticity of the evidence and points to alternative images in his complaint. Plaintiff claims he saw these other images when he registered his Beyond Savings Account. Thus, the Court will resolve the motion without the Bank's proffered website evidence.

## II.    Electronic Funds Transfer Act

Plaintiff brings two claims under the Electronic Funds Transfer Act ("EFTA"). The first is for failure to conduct a reasonable investigation, and the second is for failure to provide him with notice of his right to receive the documents upon which the Bank relied. See 15 U.S.C. § 1693f. Neither of these claims is plausible because there was no "electronic funds transfer." The EFTA defines "electronic fund transfer" as

> any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(7).

Congress undoubtedly intended the Act's coverage to be broad; the Act itself provides

5

that this list of electronic fund transfers is not all-inclusive.  See 15 U.S.C. § 1693a(7);

Kashanchi v. Texas Commerce Medical Bank, N.A., 703 F.2d 936, 939 (5th Cir. 1983).  The

primary objective of this [Act], is the provision of individual consumer rights."  15 U.S.C. §

1693(b) (2022).  As its name implies, "[t]he EFTA creates a 'framework [of] rights, liabilities,

and responsibilities of participants in electronic fund transfer systems.'"  Sanford v.

MemberWorks, Inc., 625 F.3d 550, 560 (9th Cir. 2010) (quoting 15 U.S.C. § 1693(b)).

Nevertheless, the Act must be interpreted according to its plain language and "with reference to

the statutory context, 'structure, history, and purpose.'"  L.S. v. Webloyalty.com, Inc., 954 F.3d

110, 115 (2d Cir. 2020

Plaintiff transferred $20,000 into his new Beyond Saving Account, hoping that the Bank

would subsequently transfer $200 more into that account.  Plaintiff argues that the $20,000

transfer and $200 non-transfer were part of the same transaction, and the Bank's "error" arose

from its failure to recognize that plaintiff's balance should have been $20,200, not $20,000.

But even if the Bank was obligated to deposit $200 in plaintiff's account, there was no error.

This case is not about a failure to recognize or complete an electronic transaction.  The second

transfer from the Bank did not occur because the Bank concluded it was not bound to make it.

This is fatal to plaintiff's two EFTA claims, both of which require the existence of an

electronic transfer.  Specifically, plaintiff alleges that the Bank failed to correct an error

amounting to either an "incorrect electronic transfer to or from a consumer account" or "a

computational error made by the financial instruction relating to an electronic fund transfer."

15 U.S.C. § 1693f(f)(2) and (4).  Because the Bank did not conduct an electronic transfer,

neither of these errors could have occurred.  Cf.  McFarland v. Wells Fargo Home Mortg., Inc.,

No. 05-cv-673, 2006 WL 2830025, at *4 (W.D. Mich. Sept. 29, 2006) (the EFTA "is limited to

accomplished transfers – meaning that the funds have moved from one entity to another”); Household Fin. Realty Corp. v. Dunlap, 15 Misc. 3d 659, 665, 834 N.Y.S.2d 438 (Sup. Ct. N.Y. Cnty. 2007) (“There was no unauthorized electronic transfer, no transfer of an incorrect amount, or other ‘error’ as defined under the act; there was no debit or transfer at all.).

Because the EFTA does not apply, the Bank was not required to conduct a reasonable investigation, explain its findings, or notify plaintiff that he could request all the documents upon which the Bank relied.  Rather, the Bank was only bound by the terms of the Account Agreement it entered into when plaintiff created his Beyond Savings Account.

The agreement’s terms permit a client to try and resolve any disputes with the Bank by contacting them directly, and, if the dispute remains unresolved, to send the dispute to the Maine Bureau of Financial Institutions.  The email correspondence provided by the Bank and incorporated into plaintiff’s complaint shows that this occurred between December 7, 2020, and March 9, 2021.  During this time, the Bank and plaintiff exchanged approximately eighteen emails, and the Bank went so far as to send plaintiff’s concerns to its promotions team, determine the specific reason why he was ineligible for the $200, and inform plaintiff of that reason.  There is no plausible violation of the EFTA.

### III.    Breach of Contract

Plaintiff’s allegations, the exhibits attached to his complaint, and his correspondence with the Bank do not plausibly allege that the Bank was contractually bound to pay him $200 in exchange for opening up a Beyond Savings Account.  In fact, nothing in plaintiff’s allegations demonstrate that the Bank made him a personal offer.  Plaintiff’s pleadings therefore do not establish the first required element of a breach of contract claim – a “formation of contract between plaintiff and defendant.”  Seneca Ins. Co., Inc. v. Air Prof. Assocs., LLC, No. 14-cv-

7330, 2016 WL 3087062, at *4 (S.D.N.Y. May 31, 2016) (citing Clearmont Prop., LLC v. Eisner, 58 A.D.3d 1052, 1055, 872 N.Y.S.2d 725 (3d Dep't 2009)).

To plausibly plead the existence of a contract, plaintiff would have to allege facts indicating that the offer was made to him or, at least, to any member of the general public.  See Brunner-Booth Fotochrome Corp. v. Kaufman, 18 A.D.2d 160, 164, 238 N.Y.S.2d 26 (1st Dep't 1963).  He would also have to plead the "essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated."  And the complaint would have to "clearly identify which contract provisions were breached as a result of the defendant's conduct."  Broughel v. Battery Conservancy, No. 07-cv-7755, 2009 WL 928280, at *5 (S.D.N.Y. March 30, 2009) (citing Kraus v. Visa Int'l Serv. Ass'n., 304 A.D.2d 408, 408, 756 N.Y.S.2d 853 (1st Dep't 2003)).

The complaint does not plausibly set forth any allegations that meet these requirements.  Plaintiff learned of the Beyond Savings Account Bonus when he saw a mailer addressed to his roommate.  At that point, it was incumbent upon plaintiff to determine if the Bank's mailer was only intended for individuals who receive the flier, like plaintiff's roommate, or was part of a wider campaign that was open to all potentially qualifying customers.  This is because of the hornbook principle that an offeror "is the master of his offer; just as the making of any offer at all can be avoided by appropriate language or other conduct, so the power of acceptance can be narrowly limited."  See Restatement (Second) of Contracts § 29, cmt. a.  By sending a mailer addressed to plaintiff's roommate, the Bank was exercising its right to present plaintiff's roommate, and not plaintiff, with the $200 promotional offer to create a Beyond Savings Account.

Plaintiff's incorporated correspondence confirms that the Bank only intended to make

8

this offer to plaintiff's roommate.  Specifically, when plaintiff asked why his account had not received the $200, the Bank replied that the $200 offer was only made to his roommate, "Guo Zhou," and not to him.  In the absence of further contractual language or text, the Bank only extended its offer to plaintiff's roommate.  Cf. Ingrassia v. Shell Oil Co., 394 F. Supp. 875, 882 (S.D.N.Y. 1975) (the "prerequisite of [a] legally binding agreement arises when one party, the offeror, makes an offer and [the] party to whom [the] offer is made, the offeree, accepts . . . offer and acceptance thereof are essential to a contract").

Plaintiff challenges this by claiming that he did his own independent research and concluded from third-party online statements that the Bank's promotional was meant for the general public and not a subset of it.  The complaint is conclusory; it does not describe what material he found or reviewed.  More importantly, unless that third-party was the Bank's agent, an allegation that is not supported by any factual allegations in the complaint, that third-party's statements could not expand the pool of offerees to whom the Bank addressed the offer.  See Northbound Group, Inc. v. Norvax, Inc., 5 F. Supp. 3d 956, 974 (N.D. Ill. 2013) (non-party cannot modify a contract between existing parties); cf. Don King Productions, Inc. v. Douglas, 742 F.Supp. 786, 790 (S.D.N.Y. 1990) ("offeror . . . is 'master of his offer' and is permitted to set the terms upon which acceptance can be had.").

Nevertheless, plaintiff claims that a link he used from the unnamed third-party site transported him to the Bank's homepage.  When he got there, plaintiff alleges he saw the following text on the Bank's homepage "New Customers can earn up to $300 – and an extra $200 by adding a TD savings account."  He argues that this language shows the Bank was making a binding offer to any member of the public and not just those who received its promotional circular.

9

Plaintiff reads the Bank's language too generously. "A basic rule of contract holds that whether an offer has been made depends on the objective reasonableness of the alleged offeree's belief that the advertisement or solicitation was intended as an offer." Leonard v. Pepsico, Inc., 88 F. Supp. 2d 116, 127 (S.D.N.Y. 1999) (quoting Mesaros v. United States, 845 F.2d 1576, 1581 (Fed. Cir. 1988)). An obvious joke, for example, would not give rise to a contract. See e.g., Graves v. Northern N.Y. Pub. Co., 260 A.D. 900, 22 N.Y.S.2d 537 (4th Dep't 1940).

Here, the Bank only stated that new customers "can" earn up to $300 and an extra $200 by adding a TD savings account. The word "can," which is not specifically defined by the Bank's website, is commonly defined as to "be made possible or probable by circumstances" and is "used to indicate possibility."[1] Cf. Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 567 (2d Cir. 2011) ("It is common practice for the courts of New York State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." (internal quotation marks, alterations and citations omitted)). Thus, the statement "New Customers *can* earn up to $300 – and an extra $200" (emphasis added) is a non-offer that does not require the Bank to give this benefit to all its new customers. Rather, the advertisement plaintiff cites only states that the Bank is able to select which new customers it wants to extend this type of promotional offer – in this case that was plaintiff's roommate and not plaintiff.

Finally, plaintiff alleges that after he passed the opening page of the Bank's website to create his Beyond Savings Account, he was given the Account Agreement and possibly saw additional promotional material that is "nearly identical" to the material plaintiff attached to his complaint. These allegations do not help plaintiff's case.

---

[1] See Webster's Third New International Dictionary, Unabridged ("Webster's Dictionary"), https://www.merriam-webster.com/dictionary/can?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited June 24, 2022).

The Account Agreement does not discuss the $200 incentive and, to the extent it discusses promotional offers, it states: "[f]rom time to time, we may offer cash, rate, or TD Bank Gift Card bonuses for opening . . . [an] account *and meeting specific criteria*. . . . [T]he bonus will be credited into the new personal deposit product. . . .  Offer may be withdrawn at any time and is subject to change."  (Emphasis added).  In line with this notice and its "specific criteria" requirement, the example promotional material plaintiff attached to the complaint stated that the $200 offer is "available only to the person addressed in this mailer."  Plaintiff alleges that this language was added after he created his account, but does not point to, or even recall, any version of the Bank's material that created the supposedly binding offer between the Bank and any member of the public who did not receive a mailer.  As a result, neither "the essential terms of the parties' purported contract," nor the "specific provisions of the contract" for which the Bank is liable is properly alleged.  Sirohi v. Trustees of Columbia Univ., 162 F.3d 1148, *2 (2d Cir. 1998) (unpublished) (quoting Sud v. Sud, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37 (1st Dep't 1995)); see Chrysler Capital Corp. v. Hilltop Egg Farms, Inc., 129 A.D.2d 927, 514 N.Y.S.2d 1002 (2d Dep't 1987).

## IV.      N.Y. Gen. Bus. Law §§ 349 and 350

For much the same reasons, plaintiff cannot maintain his claim that the Bank violated N.Y. Gen. Bus. Law §§ 349 and 350.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"  A cause of action under § 349 has three elements: (i) "the challenged act or practice was consumer-oriented"; (ii) "it was misleading in a material way"; and (iii) "plaintiff suffered injury as a result of the deceptive act."  Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (quoting Stutman v. Chemical Bank, 95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000)).

Similarly, § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" "The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349." Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1, 746 N.Y.S.2d 858, 863 (2002).  For this reason, courts have found that the scope of § 350 is as broad as that of § 349, see Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 498 (1999), and that its essential elements are the same. See Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015); Maurizio v. Goldsmith, 230 F.3d 518, 522 (2d Cir. 2000).

The deceptive acts prohibited by §§ 349 and 350 can be either a representation or an omission.  See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529 (1995).  Plaintiff's complaint fails meet N.Y. Gen. Bus. Law §§ 349 and 350's requirement because it does not adequately plead facts demonstrating that the Bank engaged in a deceptive act.  As detailed above, plaintiff reached the Bank's website after viewing a mailer that was not addressed to him and determining, based on unidentified third-party statements, that he was also eligible for the Bank's promotional benefits.  He then proceeded to the Bank's website via a third-party link and viewed language indicating new customers "can" (in other words "possibly"), not will or would, receive $200 if they opened up a saving account.  Plaintiff did not seek to understand from the Bank directly if he qualified for this benefit.  Instead, plaintiff just opened an account with the Bank.

None of these allegations show that the Bank deceived plaintiff or failed to disclose material information.  After seeing the promotional letter addressed to his roommate, plaintiff should have sought information from the Bank as to whether he could also take advantage of the offer.  He did not.

## CONCLUSION

The Bank's motion to dismiss is GRANTED.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
        June 27, 2022